UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KAREN STOWE STYLES,          :
               Plaintiff,   :
                                                            :  **OPINION AND ORDER**
v.  :
                                                             :  18 CV 12021 (VB)
WESTCHESTER COUNTY,        :
               Defendant.   :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Karen Stowe Styles brings this action against defendant Westchester County, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"). Plaintiff also alleges disability discrimination in violation of the Americans with Disability Act of 1990 ("ADA").

      Now pending is Westchester County's motion to dismiss the second amended complaint ("SAC") pursuant to Rules 4(m), 12(b)(2), 12(b)(5), and 12(b)(6). (Doc. #31).

      For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     Plaintiff's Employment at Westchester County Probation Department

      Defendant Westchester County has over forty governmental departments of which one is the Westchester County Probation Department (the "department").

Plaintiff, an African-American woman, has been employed by the department since 1998 and has been a probation officer since 2000.

From January 11, 2016, to January 5, 2018, plaintiff worked in the department's Custody, Adoption, Guardianship Unit ("CAG"). CAG is located at 111 Dr. Martin Luther King Jr. Blvd. in White Plains. In this position, plaintiff telecommuted, coming into the office only once a week; did field work; and qualified for overtime. It took her thirty minutes to prepare for work.

On January 5, 2018, plaintiff was transferred within the department to a position in the Adult Intake Unit ("AIU"), located at 131 Warburton Avenue, Yonkers, New York. In AIU, plaintiff was required to work from the office, five days a week, nine hours each day, was not allowed to telecommute, and was ineligible for overtime. Plaintiff's preparation time before work increased from thirty minutes to ninety minutes; it took her thirty minutes to drive to work.

II.  Plaintiff's Alleged Disability

By 2017, plaintiff alleges she became aware she was "afflicted with, among other things, an autoimmune disorder caused by her contraction of Lyme Disease." (Doc. #28 ("SAC") at ECF 4).[1] She claims that in 2017, she began treatment for "her condition." (Id. at ECF 4). She was placed on a regimen of intravenous antibiotics for six months and had treatment appointments, which required her to take time off from work. Over time, plaintiff's condition worsened and her ability to walk decreased.

Plaintiff further alleges the department was "made aware" of her "condition" in early 2017, and again in November 2017. (SAC at ECF 4). According to the SAC, sometime in 2017 or 2018, plaintiff requested that she be allowed to continue to work from home as an

---

[1] "SAC at ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

accommodation for her disability but was denied such accommodation. She also alleges the department did not offer any reasonable accommodation or consult her about what accommodation would be suitable for her condition.

III.     Alleged Discrimination

Plaintiff alleges the then-Supervising Probation Officer Kathy McLoughlin and Assistant Commissioner Ed Varela told her she was required to complete certain assignments while on medical leave in May 2017. Plaintiff says she completed these assignments, even though she should not have been required to do so.

Plaintiff also claims that on June 6, 2017, her first day back from medical leave, McLoughlin and Varela had a meeting to "confront" her about the timeliness of her reports. (SAC at ECF 6). She says McLoughlin and Varela disregarded the fact that plaintiff had provided her medical diagnosis and prognosis associated with her medical leave before she returned to work. According to plaintiff, McLoughlin and Varela should not have raised the timeliness of her reports while on sick leave because they were aware she was ill and undergoing treatment during that time.

Plaintiff further alleges that on or about November 15, 2017, she informed McLoughlin and Katerina White, whose title is not specified, that she needed to undergo immediate medical treatment to address her autoimmune disorder known as "CIDP"[2] and requested sick leave, which was granted. (SAC at ECF 4–5). Plaintiff claims McLoughlin told her that if she took any additional sick time, she would lose her position. On November 20, 2017, department

---

[2]     The SAC does not define "CIDP," but publicly-available research indicates that CIDP stands for "Chronic Inflammatory Demyelinating Polyneuropathy." See What is Chronic Inflammatory Demyelinating Polyneuropathy (CIDP)?, https://www.webmd.com/brain/what-is-cidp#1 (last visited March 4, 2020).

Assistant Commissioner Mary Frascello notified plaintiff by email that while on sick leave, plaintiff must complete work assigned to her.

According to the SAC, in January 2018, when plaintiff was transferred from CAG to AIU, Donielle Haggerty, a Caucasian female, took over plaintiff's position in CAG and was allowed to telecommute. Meanwhile, as noted above, in plaintiff's new assignment in AIU, plaintiff could no longer telecommute but had to work from the office.

Plaintiff also alleges that in her position in AIU, she was required to travel to the office during inclement winter weather even though other employees were permitted to stay home. Plaintiff says she travelled to the office during bad weather on at least one occasion, in February or March 2018, while using a cane and wearing a brace prosthesis on her paralyzed left foot.

Plaintiff also claims she suffered several negative health effects from the transfer to AIU. She allegedly fell on more than one occasion, was unable to attend weekly therapy sessions and had to switch to a bi-weekly schedule, and also developed a documented anxiety disorder.

Following her transfer to AIU, plaintiff alleges she told Frascello her new assignment was inappropriate given her disability and the medical treatment she required. Plaintiff claims that on or about January 5, 2018, Frascello responded by "referenc[ing] the filing of an Article 72 which would have found plaintiff unfit to work, resulting in her termination of employment." (SAC at ECF 4). Plaintiff says she understood Frascello's comment to be an "ultimatum." (Id.).

Plaintiff alleges she then tried to communicate further up the chain of command regarding the transfer but was "rebuffed." (SAC at ECF 6). She claims she contacted department Commissioner Rocco Pozzi in early January 2018, both in person and via email to the Commissioner's secretary. Plaintiff further claims her efforts were "without result." (Id.).

4

According to plaintiff, Frascello wrote and circulated to senior staff an internal memorandum dated January 18, 2018. Plaintiff alleges the memorandum mischaracterized her work performance after she became disabled. For example, it referenced plaintiff's untimely reports from when plaintiff was on medical leave during May and June 2017. However, plaintiff claims she completed those reports "in time" for submission to court and, moreover, the reports should have been reassigned while she was on medical leave. (SAC at ECF 6).

Plaintiff also alleges that from May 2017 to March 2018, female Caucasian probation officers in the department, including those in CAG and those who were not disabled, were not required to work while on sick leave, were not threatened with termination for using sick time, and were not reprimanded for the timeliness of work due while on medical leave. During this same time, the department provided telecommuting assignments to Caucasian probation officers who did not have a disability. Plaintiff claims the department was aware she "was not being treated in a manner that was fair and in compliance with the laws prohibiting discriminatory conduct against her during her employ based upon her race, gender or disability." (SAC at ECF 2).

IV.   EEOC Right-to-Sue Letter

On March 22, 2018, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC").

The EEOC issued plaintiff a "right-to-sue" letter on September 19, 2018, and plaintiff commenced this action on December 19, 2018.[3] On April 5, 2019, in accordance with the Court's March 27, 2019, Order (Doc. #15), plaintiff filed a first amended complaint to substitute

---

[3]   The SAC does not specify the date on which plaintiff received the right-to-sue letter. However, defendant does not contend the lawsuit was filed more than 90 days after plaintiff received the letter.

Westchester County as defendant in the department's stead. (Doc. #16). On May 17, 2019, after defendant moved to dismiss, plaintiff filed the SAC. (Doc. #28). Thereafter, defendant renewed its motion to dismiss.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[4] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In addition, the Court may consider materials subject to judicial notice, but not for the truth of their contents. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008).[5]

II. Service of Process and Personal Jurisdiction

Defendant argues the case should be dismissed because the County has not been timely served with the SAC.

The Court disagrees.

A. Applicable Law

1. Service of Process

"Where a defendant moves for dismissal under Rules 12(b)(2), (5), and (6), the Court must first address the preliminary questions of service and personal jurisdiction." Hertzner v. U.S. Postal Serv., 2007 WL 869585, at *3 (E.D.N.Y. Mar. 20, 2007). When considering a motion to dismiss for insufficient service of process, a court must look to matters outside the complaint to determine whether it has jurisdiction. Mende v. Milestone Tech., Inc., 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). The plaintiff bears the burden of proving service of process was adequate. Id.

---

[5] Both parties rely improperly on "facts" from outside the SAC, largely asserted in their unsworn briefs. Except for those matters of which the Court may take judicial notice, the Court does not consider any such improperly alleged facts.

7

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2008). "[I]ncomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972). "The objective of service of process is to insure actual notice." Thomas v. Yonkers Police Dep't Transp. Unit, 147 F.R.D. 77, 79 (S.D.N.Y. 1993). Moreover, Rule 61 states "the court must disregard all errors and defects that do not affect any party's substantial rights."

When a defendant moves for dismissal for insufficient service of process under Rule 12(b)(5), a court must look to Rule 4, which governs "the content, issuance, and service" of process. DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Rule 4 "is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." Romandette v. Weetabix Co., Inc., 807 F.2d 309, 311 (2d Cir. 1986).

Rule 4(j)(2) states that a state or local governmental entity may be served by "delivering a copy of the summons and of the complaint to its chief executive officer" or by "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Under New York law, to serve a county, a plaintiff must serve process "to the chair or clerk of the board of supervisors, clerk, attorney or treasurer." N.Y. C.P.L.R. 311(a)(4).

If a plaintiff fails to effect service within ninety days after a complaint is filed, but she demonstrates good cause for such failure, the court must allow for an appropriate extension for proper service. Fed. R. Civ. P. 4(m). Moreover, the court has discretion to extend the service

8

period even when no good cause is shown. Zapata v. City of New York, 502 F.3d 192, 196–97 (2d Cir. 2007). "The Court considers the following four factors when determining to grant an extension of time absent a showing of good cause: (1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiffs' time for service." Garcia v. City of N.Y., 2017 WL 1169640, at *5 (S.D.N.Y. Mar. 28, 2017).

### 2. Relation Back

Under the doctrine of relation back, "an amended pleading relates back to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 541 (2010).

Rule 15(c)(1)(C) allows for an amended pleading to relate back to the date of the original pleading if four conditions are met: "(1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party [knew or] should have known that, but for a mistake of identity, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within [the period provided by Rule 4(m) for serving the summons and complaint], and . . . the original complaint [was] filed within the limitations period." Ceara v. Deacon, 916 F.3d 208, 211 (2d Cir. 2019). The key question under the third prong is "what the prospective defendant knew or should have known during the Rule 4(m) period." Krupski v. Costa Crociere S.p.A., 560 U.S. at 548 (emphasis in original).

B. <u>Application</u>

Here, it is undisputed plaintiff has not served the County, but only served the department by delivering the summons and original complaint to department Assistant Commissioner Jim Duque. Plaintiff inexplicably offers no reason why she has not attempted to serve the County in accordance with Rule 4(j)(2). Accordingly, she has not effected service within ninety days after filing the complaint and fails to meet the good cause standard in Rule 4(m).

Nevertheless, the Court, in an exercise of its discretion, will grant plaintiff an extension of time under Rule 4(m) to serve process, for the following reasons. First, because the EEOC right-to-sue letter is dated September 19, 2018, plaintiff is correct that dismissal of this case on the basis of insufficient service of process would be fatal to her case.[6] Second, a copy of the right-to-sue letter was sent to John M. Nonna, Esq., the Westchester County Attorney, putting the County on notice of plaintiff's claims. (Doc. #28-2). Third, the County certainly has had actual notice of this lawsuit since at least February 22, 2019, when that day, the County Attorney's Office entered a notice of appearance on behalf of the department and wrote to the Court seeking an extension of time to file a motion to dismiss. (Docs. ## 5, 6). Indeed, in a subsequent letter to the Court from the County Attorney, defense counsel acknowledged that personal service was made on the department on February 7, 2019. (Doc. #8). Moreover, in a letter dated March 22, 2019, plaintiff's counsel informed the Court that defense counsel told plaintiff's counsel the County, and not the department, is the proper defendant in this case. (Doc. #12). There is no question the County was aware of the claims against it at the earliest stages of

---

[6] When a plaintiff is issued a notice of right-to-sue from the EEOC, "she has 90 days from receipt of that notice to file a lawsuit relating to those charges." <u>Thomson v. Odyssey House</u>, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015), <u>aff'd</u>, 652 Fed App'x 44 (2d Cir. 2016) (summary order).

this case. Finally, defendant does not identify any prejudice it would face if the time to serve the SAC on the County under Rule 4(m) is extended.

Moreover, the Court concludes the SAC relates back to the original complaint filed on December 19, 2018: (i) the claims in the SAC against the County arise out of the same conduct alleged in the original pleading against the department; (ii) the County received notice of the claims within fifty days of the complaint's filing;[7] and (iii) the County knew within the same time frame that the action would have been brought against it but for a mistake concerning the proper defendant. Thus, the original complaint was filed within the limitations period, and the County received sufficient actual notice such that it will not be prejudiced in maintaining its defense.

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction and insufficient service of process is denied.

III. Notice of Claim

Defendant next argues plaintiff's NYSHRL claim for discrimination based upon race and gender should be dismissed because plaintiff has failed properly to serve a Notice of Claim in accordance with New York General Municipal Law §§ 50-e and 50-i, and County Law § 52.

The Court agrees.

A. Applicable Law

"State claims brought under state law in federal court are subject to state procedural rules." Russell v. Westchester Cmty. Coll., 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017). New York County Law § 52, which applies in this case, provides in pertinent part:

> Any claim or notice of claim against a county . . . for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any

---
[7] December 19, 2018, to February 7, 2019, is fifty days.

misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law. Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

Section 52 thus explicitly incorporates the notice of claim requirements contained in General Municipal Law §§ 50-e and 50-i. Section 50-e requires that a notice of claim be filed within ninety days of the incident giving rise to the claim. See N.Y. Gen. Mun. Section 50-e. Pursuant to Section 50-i, "[a] plaintiff must plead in the complaint that: (1) the Notice of Claim was served; (2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006). Plaintiff bears the burden of demonstrating compliance with the notice of claim requirement. Id.

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793–94 (2d Cir. 1999). Specifically, failure to comply with County Law § 52 requires dismissal of state law claims. See Chabot v. County of Rockland, 2019 WL 3338319, at *9 (S.D.N.Y. July 25, 2019).

B.  Application

Here, plaintiff does not allege in her SAC or in her opposition to the motion to dismiss that she served a notice of claim on the County or the department.

Instead, citing Caputo v. Copiague Union Free Sch. Dist., 218 F. Supp. 3d 186 (E.D.N.Y. 2016), and Margerum v. City of Buffalo, 24 N.Y. 3d 721 (2015), plaintiff argues her NYSHRL claim is not a tort claim to which the notice of claim requirement applies. In Margerum, however, the New York Court of Appeals concluded that "the General Municipal Law does not encompass a cause of action based on the Human Rights Law and service of a notice of claim is

12

therefore not a condition precedent to commencement of an action based on the Human Rights Law in a jurisdiction where General Municipal Law §§ 50-e and 50-i provide the only notice of claim criteria." Id. at 730 (emphasis added). Indeed, other courts have held that "[t]he notice of claim requirements set out in County Law Section 52 do generally apply to New York State Human Rights Law Claims for employment discrimination and retaliation" against a county. Melendez v. Cty. of Westchester, 2019 WL 297519, at *2 (S.D.N.Y. Jan. 23, 2019); Russell v. Westchester Cmty. Coll., 2017 WL 4326545, at * 5–6 (S.D.N.Y. Sept. 27, 2017).

Accordingly, plaintiff's state law discrimination claim under the NYSHRL is dismissed.[8]

IV. Statute of Limitations

Defendant makes three vague, passing references in its opening brief—in its preliminary statement and in two undeveloped footnotes—to a statute of limitations time bar on certain of plaintiff's discrimination claims. (Doc. #33 ("Defs. Mem.") at 1 & n.1, 18 n.9). According to defendant, claims that plaintiff was asked to perform work while on leave in May 2017 and that McLoughlin and Varela asked plaintiff about the timeliness of her reports on June 6, 2017, are untimely because they occurred before June 16, 2017. Defendant argues these claims of disability discrimination should be dismissed.

The Court disagrees.

The Court need not evaluate arguments that are so drastically underdeveloped, particularly when they are raised in a footnote. See Diesel v. Town of Lewisboro, 232 F.3d 92, 110 (2d Cir. 2000) (footnote in primary brief was insufficient to raise argument).

---

[8] Though plaintiff has not specifically alleged a disability claim based on violation of state law, and even though neither party has briefed it, to the extent plaintiff also brings such a claim, it fails for the same reason.

Because defendant raised a statute of limitations issue only in passing references in the preliminary statement and in two brief footnotes, the argument is not properly presented and will not be considered. Out of fairness to defendant, however, the statute of limitations argument may be re-presented in a motion for summary judgment after the close of discovery.

V. Exhaustion of Gender Discrimination Claim

Defendant argues plaintiff's Title VII gender discrimination claim should be dismissed because plaintiff did not exhaust that claim before the EEOC and because it is not reasonably related to plaintiff's EEOC charge of discrimination.

Although it is a close call, the Court disagrees.

Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Id.

However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir. 2001). The Court's "focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Deravin v. Kerik, 335 F.3d 195, 201

(2d Cir. 2003). The central issue is whether the EEOC charge provided "adequate notice to investigate discrimination on both bases." Id. at 202.

Here, plaintiff did not check the "sex" box on the EEOC charge of discrimination form. (Doc. #28-1). However, in its "right-to-sue" letter, the EEOC specifically notes, "You allege you were subjected to employment discrimination for reasons related to . . . sex, female," indicating the EEOC had adequate notice to investigate discrimination on the basis of gender. (Doc. #28-2).

Accordingly, plaintiff's Title VII gender discrimination claim will not be dismissed for failure to exhaust. As set forth below, however, this claim is dismissed for failure to state a claim.

VI.     Failure to State a Claim

Defendant argues plaintiff's Title VII and ADA claims for race, gender, and disability discrimination cannot proceed because plaintiff fails plausibly to allege the County's conduct violated Title VII and the ADA.

The Court agrees with respect to plaintiff's Title VII gender discrimination claim but not with respect to plaintiff's Title VII race discrimination and ADA discrimination claims.

A.      Applicable Law

To state a Title VII or ADA discrimination claim, a plaintiff must allege two elements: (i) the employer discriminated against her (ii) because of a protected characteristic. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015); see Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 467–68 (2d Cir. 2019).

1. <u>Title VII</u>

A plaintiff satisfies the first prong of Title VII by alleging an adverse employment action, which "entails a materially adverse change in the terms and conditions of employment." <u>Quadir v. N.Y.S. Dep't of Labor</u>, 39 F. Supp. 3d 528, 541 (S.D.N.Y. 2014) (quoting <u>Sanders v. N.Y.C. Human Res. Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004)).

As to the second prong, "at the pleadings stage of an employment discrimination case, a plaintiff has a <u>minimal</u> burden of alleging facts suggesting an inference of discriminatory motivation." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d at 85 (citing <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 310 (2d Cir. 2015)). Namely, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." <u>Id</u>. at 87.

"[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the <u>prima</u> <u>facie</u> stage of the Title VII analysis." <u>Zimmermann v. Assocs. First Capital Corp.</u>, 251 F.3d 376, 381 (2d Cir. 2001).

2. <u>The ADA</u>

To state a <u>prima</u> <u>facie</u> claim under the ADA, a plaintiff must allege: (i) plaintiff's employer is subject to the ADA; (ii) plaintiff was disabled within the meaning of the ADA; (iii) plaintiff was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (iv) plaintiff suffered adverse employment action because of his disability. <u>Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.</u>, 198 F.3d 68, 72 (2d Cir. 1999). Similarly, to establish a <u>prima</u> <u>facie</u> case for failure to provide a reasonable accommodation, a plaintiff also must satisfy the first three factors,

but for the fourth factor, she must show her employer refused to provide a reasonable accommodation. McMillan v. City of New York, 711 F.3d 120, 125–26 (2d Cir. 2013).

B. Application

Here, plaintiff satisfies the minimal burden necessary plausibly to allege a race discrimination claim under Title VII and a disability discrimination claim under the ADA, but not a gender discrimination claim under Title VII.

1. Title VII Claims

In particular, plaintiff alleges the department replaced her in the CAG unit with a Caucasian woman and that certain female Caucasian probation officers were not required to work while on sick leave, were not threatened with termination for using sick time, and were not reprimanded for untimely completion of assignments due while on medical leave. This is sufficient to "give plausible support to a minimal inference of discriminatory motivation" for plaintiff's Title VII race discrimination claim. Littlejohn v. City of New York, 795 F.3d at 311.

As for plaintiff's gender discrimination claim, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. at 679. The SAC summarily states that the County "was motivated in its unlawful action by reasons of discrimination on the bases of race[,] creed, color, gender, and/or national origin against Plaintiff." (SAC at ECF 8). Plaintiff alleges no facts indicating she was treated differently from male probation officers but rather only facts respecting other female employees.

Accordingly, plaintiff fails to allege a plausible gender discrimination claim.

2. ADA Claim

Plaintiff also plausibly alleges a disability discrimination claim. The parties do not dispute that the County is subject to the ADA or that plaintiff is otherwise qualified to perform the essential functions of her job, with or without a reasonable accommodation.

Plaintiff sufficiently alleges she was diagnosed with Lyme's Disease and severe neuropathy. Indeed, plaintiff claims she uses a cane and wears a brace prosthesis to support her paralyzed left foot.

Plaintiff also plausibly alleges she has suffered several adverse employment actions because of her disability, including that her employer refused to provide a reasonable accommodation.

First, plaintiff alleges that during several authorized absences, she was required to complete assignments even though such work should have been reassigned.

Second, according to the SAC, in January 2018, after the department became aware of her medical condition and after she had taken several medical leaves, she was transferred from CAG to AIU, meaning she could no longer telecommute. In addition, she also lost opportunities for overtime pay. When plaintiff complained to Assistant Commissioner Frascello, Frascello "referenced the filing of an Article 72 which would have found Plaintiff unfit to work, resulting in her termination of employment" (SAC at ECF 4), and circulated an internal memorandum allegedly mischaracterizing plaintiff's work performance. Further, plaintiff's efforts to contact Commissioner Pozzi were met "without result." (Id. at ECF 6).

Moreover, plaintiff alleges other "facts that indirectly show discrimination [that] giv[e] rise to a plausible inference of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 87. For example, according to the SAC, in June 2017, the first time plaintiff returned

from sick leave while having completed assignments during leave, her supervisors confronted her about the timeliness of her reports during her leave. Subsequently, plaintiff was allegedly replaced in CAG by a woman without a disability. Plaintiff also alleges she was required to travel into the office in inclement weather, when other able-bodied personnel were allowed to stay home. These allegations sufficiently "give plausible support to a minimal inference of discriminatory motivation" for plaintiff's ADA claim. See Littlejohn v. City of New York, 795 F.3d at 311.

Accordingly, plaintiff's Title VII race discrimination and ADA claim for disability discrimination shall proceed, but plaintiff's Title VII gender discrimination claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's NYSHRL claim and Title VII gender discrimination claim are dismissed.

Plaintiff's Title VII race discrimination claim and ADA disability discrimination claim shall proceed.

**By March 31, 2020, plaintiff shall properly serve the SAC on defendant.**

**By April 14, 2020, defendant shall file an answer.**

The Clerk is instructed to terminate the motion. (Doc. #31).

Dated: March 10, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge